**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AAREFAH MOSAVI,<br><br>       Plaintiff-Appellant,<br><br>  v.<br><br>MT. SAN ANTONIO COLLEGE;<br>CHESTER BROWN; LORRAINE JONES,<br>in her individual and official capacities;<br>JAMES P. CZAJA, in his individual and<br>official capacities; WILLIAM T.<br>SCROGGINS, in his individual and official<br>capacities; BAILEY SMITH, in her<br>individual and official capacities,<br><br>       Defendants-Appellees. | No.   18-56321<br><br>D.C. No.<br>2:15-cv-04147-VAP-AFM<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted February 14, 2020
Pasadena, California

Before:  SCHROEDER, BERZON, and R. NELSON, Circuit Judges.

Mosavi asks this Court to reverse the grant of summary judgment to the

college and to its employees as to Mosavi's claims for deprivation of access to

---

       [*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

educational opportunities under Title IX and section 1983 and religious harassment under the California and federal constitutions. She also asks this Court to reverse the jury verdict for Brown. We affirm.

1. A plaintiff seeking to hold liable a recipient of federal funding for its handling of allegations of student-to-student sexual misconduct must show that the funding recipient acted with "deliberate indifference" to sexual harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 648-50 (1999). A showing that a college was merely "negligent, lazy, or careless" will not satisfy this standard. *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006).

Here, the college promptly responded to Mosavi's allegations and thoroughly investigated them. At the outset of its investigation, the college took multiple steps to keep Brown away from Mosavi. The college proceeded to interview both Brown and Mosavi several times. Over the course of those interviews, Mosavi's account of Brown's conduct changed significantly. The college ultimately concluded that there was insufficient evidence to substantiate Mosavi's serious allegations against Brown, and that the corroborated remark Brown made about seeing Mosavi's neck through her hijab did not rise to the level of harassment.

2

Against this backdrop, each of Mosavi's deliberate indifference arguments fails. First, the college did not manifest deliberate indifference by failing to interview her sister, Sayedah Mosavi. The investigators were aware that Sayadeh Mosavi had no personal knowledge of what transpired between Mosavi and Brown and that she had no personal knowledge of severe and pervasive sexual harassment by Brown against her or anyone else. The information she could have provided was of limited relevance, so the college's decision not to interview her was at worst negligent, not deliberately indifferent. *See Oden*, 440 F.3d at 1089.

Second, the college was not deliberately indifferent to sexual harassment when it declined to discipline Brown for conduct which, according to Mosavi, he admitted. Jones testified at her deposition that Brown had told her that Mosavi was initially "annoyed" when Brown requested that Mosavi hug him, not that Brown admitted that the hug was forced upon her (as Mosavi at points stated) or overtly sexual (as Mosavi also stated). Even if Brown had admitted that the nonsexual, "simple hug" he described to Jones was given without Mosavi's consent, that isolated incident would not constitute the "severe" and "pervasive" harassment required to prevail under Title IX. *Davis*, 526 U.S. at 648-50 (1999).

Nor was the college deliberately indifferent in failing to take sufficient measures to prevent Mosavi from encountering Brown on campus. Although the measures taken by the college did not, as it turned out, prevent Mosavi from seeing

3

Brown on the way to class, the college's failure to prevent that encounter did not amount to deliberate indifference to severe and pervasive harassment. *See Oden*, 440 F.3d at 1089.

2. Public school administrators who fail to take protective measures against religious harassment may be held liable for religious discrimination in violation of the equal protection guarantees of the California and federal constitutions if a plaintiff can show that the defendants either intentionally discriminated against the plaintiff or acted with deliberate indifference. *See Flores v. Morgan Hill Unified Sch. Dist*, 324 F.3d 1130, 1135 (9th Cir. 2003); *Donavan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th. 567, 608-09 (2008). Mosavi has not made that showing.

The college investigated Brown's comments about Mosavi's hijab. It could not substantiate Mosavi's allegation that Brown asked her to remove her hijab, and it determined that the remark Brown made about seeing Mosavi's neck through her hijab did not rise to the level of harassment

Nor did religious bias taint the college's investigation. Jones's statement regarding "tak[ing] into consideration Ms. Mosavi's faith and culture" does not support an inference that the college treated Mosavi's faith as a reason for discounting her credibility or that it was deliberately indifferent to her allegations.

3. "To reverse a jury verdict for evidentiary error, [this Court] must find that the trial court abused its discretion in a manner that prejudiced the appealing

4

party." *United States v. 4.85 Acres of Land*, 546 F.3d 613, 617 (9th Cir. 2008). "A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 688 (9th Cir. 2001). None of the evidentiary errors to which Mosavi objects meet that standard.

The district court's ruling that the parties were not to use the term "rape," as opposed to "sexual assault," in characterizing Mosavi's allegations against Brown was consistent with Federal Rule of Evidence 403. Rule 403 confers broad discretion on trial judges to "sense the dynamics of a trial" and accordingly to "balanc[e] probative value against prejudice." *Longenecker v. General Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir. 1979). The district court's ruling that "rape" to a lay person connotes nonconsensual sexual intercourse and so would be unfairly prejudicial on the facts of this case as presented by Mosavi was not an abuse of discretion.

The district court's granting of a motion in limine excluding any testimony or argument as to the alleged insufficiency of the college's investigation was not prejudicial. During trial, Mosavi was permitted extensively to cross-examine the only testifying witness involved in the college's investigation, Jones, about the investigation.

Excluding Mosavi's medical records because they were not introduced by an

expert witness to lay a foundation for their admission was not an abuse of discretion. *See* Fed. R. Evid. 901(a). Moreover, Mosavi testified extensively about the medical issues she experienced and about the treatments and accommodations she received. The court sustained objections as to some of her uses of medical terminology, but, even if improper, which we do not decide, sustaining these objections could not have affected the verdict, as the testimony was allowed in lay language.

Finally, permitting Brown's counsel to use text messages exchanged between Brown and Mosavi to impeach Mosavi during cross-examination was not an abuse of discretion. Both Brown and Mosavi used the text messages to impeach one another.

4. The district judge's conduct toward Mosavi's counsel and her supporters present in the courtroom did not manifest actual bias or "leave[] an abiding impression that the jury perceived an appearance of advocacy or partiality." *United States v. Laurins*, 857 F.2d 529, 537-38 (9th Cir. 1988). Accordingly, there is no basis for ordering a new trial on the ground of judicial bias.

AFFIRMED